# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DONALD F. FRENCH II,** | ) | |
| | ) | **No. 14 CV 10240** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | **September 14, 2016** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Donald French filed an application for Disability Insurance Benefits ("DIB") alleging that he is disabled because of left shoulder pain, chronic and severe neck pain, radiating pain and numbness in his arms and hands, and headaches. After the Commissioner of the Social Security Administration denied his application, French filed this suit seeking judicial review. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, French's motion for summary judgment is denied, the government's is granted, and the Commissioner's final decision is affirmed:

### Procedural History

French filed his DIB application in January 2012 alleging a disability onset date of October 14, 2010. (Administrative Record ("A.R.") 197-98, 222.) After his claim was denied initially and on reconsideration, (id. at 73-74), French requested and was granted a hearing before an Administrative Law Judge ("ALJ"). The

hearing took place on September 4, 2013. (Id. at 27-72.) At the hearing, French amended his alleged onset date to a later date, July 23, 2011. (Id. at 33.) On September 27, 2013, the ALJ issued a decision finding that French is not disabled and not entitled to DIB. (Id. at 8-21.) When the Appeals Council denied review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner, *see Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). French filed this action seeking judicial review, (R. 1); *see* 42 U.S.C. § 405(g), and the parties consented to this court's jurisdiction, (R. 5); *see* 28 U.S.C. § 636(c).

## Background

On September 21, 2007, French was working as a machine operator at a manufacturing plant when he suffered injuries to his left shoulder and neck from an on-the-job accident. He was 42 years old at the time. French says that since his injury he has had debilitating and on-going pain in his neck and back and daily headaches. At his hearing before the ALJ, French presented both documentary and testimonial evidence in support of his DIB application.

### A.    Medical Records

After French injured his left shoulder and neck in 2007, he continued to feel pain despite undergoing treatment for his injuries. In April 2008, French underwent a surgical procedure to correct a rotator cuff tear in his left shoulder. (A.R. 499-500.) In December 2008, he received another corrective procedure to improve his left shoulder motion. (Id. at 502.)

The following year, on August 13, 2009, Dr. Daniel Mulconrey performed a spinal fusion procedure to treat French's cervical spondylosis, upper extremity radiculopathy, and axial neck pain. (Id. at 503.) Dr. Mulconrey noted no complications during or after this procedure. (Id. at 505.) In March 2010 Dr. Mulconrey restricted French's lifting to 10 pounds for his left shoulder and 25 pounds for his cervical spine for three months. (Id. at 429.) Dr. Mulconrey noted that French continued to have some mild axial neck pain, as well as intermittent discomfort in his left shoulder, but wrote that he had improved since his last appointment. (Id. at 426.) In July 2010 Dr. Mulconrey ordered a cervical spine CAT scan which revealed no evidence of spinal stenosis and showed that his cervical vertebral alignment appeared normal. (Id. at 433.) On August 17, 2010, Dr. Mulconrey opined that French is "[t]otally unable to work from now until: 9/1/10. At 9/1/10 he will need to decide between proceeding with surgery" or a functional capacity evaluation. (Id. at 428.)

On September 27, 2010, an MRI of French's cervical spine indicated small disc bulges but no significant stenosis in any area. (Id. at 396.) The following month Dr. Mulconrey performed a spinal fusion for his degenerative disc disease and stenosis. (Id. at 435.) After the procedure Dr. Mulconrey noted that French was in stable condition and suffered no post-operative complications. (Id. at 437.) In November 2010 French reported to Dr. Mulconrey that he was in too much pain to do physical therapy. (Id. at 411.) Dr. Mulconrey started French on Flexeril, a muscle relaxant, and continued with his Norco prescription. (Id.) In April 2011

French told Dr. Mulconrey that his headaches had dramatically improved since surgery, but that he continued to experience numbness in his upper extremity. (Id. at 407.) Dr. Mulconrey reviewed French's 2009 functional capacity evaluation restricting him to light work with a 10 to 20 pound lifting restriction and no work above chest level, and opined that these restrictions were reasonable. (Id.)

Records indicate that from April 2010 through July 2013, French was a patient of Dr. Arnold Faber, who treated him for his chronic back and neck pains. (Id. at 506-34.) Dr. Faber diagnosed him with chronic pain syndrome and degenerative cervical radiculopathy. (Id. at 516.) In August 2010, Dr. Faber rated French as being 50% reduced in his ability to perform functions including sitting, standing, turning, pulling, and speaking, and wrote that he should not work until released by a surgeon. (Id. at 469.) In May 2011, Dr. Faber wrote that French had not been able to work since his accident because of pain and numbness and that he expected the disability to continue indefinitely. (Id.) Dr. Mulconrey noted in September 2011 that he did "not disagree" with Dr. Faber's assessment of French's condition and inability to work. (Id. at 403.) In April 2013, Dr. Faber examined French and again opined that he was more than 50 percent reduced in his ability to walk, bend, stand, stoop, sit, turn, climb, push, pull, and travel and in his ability to perform fine and gross manipulation. (Id. at 519.) A May 2013 MRI of French's lumbar spine showed mild degenerative irregularities and mild stenosis. (Id. at 529-30.)

French visited Dr. Mulconrey again in July 2013, complaining of back and leg pain at a level of nine on a ten-point scale. (Id. at 535.) He also reported that standing and walking worsened the pain. (Id.) Dr. Mulconrey determined that French suffered from disc displacement, lumbar pain, and low extremity pain. (Id. at 536.) He recommended physical therapy as well as another epidural steroid injection. (Id. at 536-38.) Dr. Mulconrey wrote that French showed significant improvement with conservative treatment and noted that he expected continued improvement with physical therapy and steroid injections. (Id.)

On Dr. Mulconrey's referral French went to a pain clinic in July 2013. (Id. at 541-42.) Dr. Eugene Becker examined French and noted that French used a cane to ambulate and had a decreased range of motion in the neck. (Id. at 541.) Dr. Becker also noted that French had significant disc herniation, and recommended that French undergo physical therapy. (Id. at 541-42.) French declined Dr. Becker's offer to administer an epidural steroid injection at that time, but indicated he would consider steroid injections in the future. (Id. at 542.)

On March 10, 2012, Dr. Stanley Simon conducted a consultative examination for the Bureau of Disability Determination Services ("DDS").[1] (Id. at 475-78.) Dr. Simon noted that French was able to get on and off the exam table without difficulty and walk more than 50 feet without support. (Id. at 477.) He also found that French was able to fully extend his hands and that the range of motion in his elbows and wrists was not limited. (Id.) Dr. Simon also noted that French had full

---

[1] In the ALJ's opinion, the ALJ erroneously refers to Dr. Simon as Dr. Taiwo, but the record shows that Dr. Simon conducted the consultative examination.

range of motion of the lumbar spine but that he complained of dizziness during forward bending.  (Id.)  Dr. Simon concluded that French has chronic bilateral shoulder pain, a history of chronic neck pain, neuropathy of the hands, headaches, and hypertension.  (Id. at 478.)  He completed a Range of Motion form and noted significant limitations in the range for French's cervical spine and some limitations for his shoulder.  (Id. at 481.)  French's range of flexion for his right shoulder is 120/150 and for his left is 90/150.  (Id.)

That same month, medical consultant Dr. Richard Smith reviewed the medical records and completed a physical residual functional capacity ("RFC") assessment for French.  (Id. at 488-95.)  Dr. Smith opined that French could lift 20 pounds occasionally and 10 pounds frequently, stand and walk at least two hours in an eight-hour workday, and sit about six hours in an eight-hour workday.  (Id. at 489.)  Because of decreased range of motion in both shoulders, Dr. Smith opined that French would be limited to reaching overhead only occasionally.  (Id. at 491.)  He further concluded based on the medical records that French's statements are partially credible because objective medical evidence does not support his allegations that he needs assistance dressing and showering.  (Id. at 493.)

## B.    Hearing Testimony

At his hearing before an ALJ on September 4, 2013, French appeared represented by an attorney.[2]  He testified that he is six feet tall, weighs 375 pounds,

---

[2]  Before eliciting testimony from French, the ALJ noted that French amended his alleged disability onset date from October 14, 2010, to July 23, 2011.  (Id. at 33.)  On

and suffers from pain in his shoulders and hands that is severe enough to prevent him from working. (A.R. 35, 45.) Because of his lower back pain, he has had trouble walking. (Id. at 47.) French testified that he had several surgeries to alleviate his neck pain, the most recent in October 2010, and for his shoulders several years ago. (Id. at 45-46.) Despite the surgeries, he continues to suffer from neck pain and pain across his shoulder blades. (Id. at 45.) But French said that the surgeries have helped to reduce the severity of his headaches, which he experiences two or three times a day. (Id. at 46, 55.)

French further testified that he has suffered back pain for "quite a few years." (Id. at 47.) Depending on the day or the temperature, he can walk anywhere from 30 to 100 feet before having any pain. (Id.) French said that he could stand for about 10 to 15 minutes before needing to sit down. (Id.) French testified that aside from taking Norco and using Fentanyl patches, he had not had "any real treatment" for his back pain, but he was "supposed to be getting an injection" and physical therapy "in the next week or two." (Id. at 49-50.) French has been using a cane to walk since February 2013. (Id. at 52-53.) He also wears a neck collar on occasion for lengthy car rides. (Id. at 53.) French also testified that his neck mobility is limited because of sharp, stabbing pains. (Id. at 54.)

On a typical day, French wakes up around 5:30 a.m. (Id. at 50.) His children help prepare his breakfast before they leave for school. (Id.) After breakfast, French will lie on the couch and nap. (Id.) He also sits down to watch television.

July 22, 2011, a different ALJ issued a decision denying his earlier DIB application. (Id.)

(Id.)  He testified that he has trouble sleeping for more than three to four hours a night because he cannot get comfortable, and this makes him "extremely exhausted" throughout the day.  (Id. at 70.)  French also explained that he rarely leaves the house because the pain makes it hard for him to move around.  (Id. at 50-51.)  His mother takes him grocery shopping and his children handle the household chores such as cleaning and cooking.  (Id. at 51.)  French also has difficulty concentrating and remembering to complete tasks such as making phone calls.  (Id. at 69.)

C.    **Vocational Expert Testimony**

The vocational expert ("VE") testified at the hearing that French's past employment included work as a construction worker, forklift truck operator, and machine packager.  (A.R. 64-65.)  The ALJ asked the VE whether an individual who can perform light work but cannot climb ladders, ropes, or scaffolding, and who can occasionally crouch, crawl, and reach overhead bilaterally would be able to perform French's previous work.  (Id. at 65.)  The VE responded that such a person is unable to perform French's prior positions but is able to perform sedentary positions including office worker, general office worker, order clerk, and information clerk. (Id. at 65-66.)  The ALJ then asked whether an individual restricted to sedentary work, who is unable to climb ladders, ropes, or scaffolding, cannot kneel or crawl, but can occasionally reach overhead bilaterally, climb ramps and stairs, balance, stoop, and crouch would be able to perform these positions.  (Id.)  The VE responded that such an individual would be able to perform these positions even while using a cane.  (Id. at 67.)  However, the VE testified that an individual would be precluded

from work if he would miss two to three days of work per month, would require a 15-minute break for every 45 minutes of work, or would be off-task for 15-30 percent of the workweek. (Id. at 67-68.)

**D.    The ALJ's Decision**

On September 27, 2013, the ALJ denied French's DIB application after evaluating his claims under the required five-step evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). After concluding that French meets the insured status through December 31, 2016, the ALJ determined at step one that French has not engaged in substantial gainful activity since July 23, 2011, the amended onset date. (A.R. 13.) At step two, the ALJ found that French has severe impairments including degenerative disc disease of the cervical spine, degenerative joint disease of the shoulders, lumbar degenerative disc disease, a herniated disc, diabetes mellitus, hypertension, and obesity. (Id. at 14.) At step three, the ALJ opined that French does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before turning to step four, the ALJ determined that French has the RFC to perform sedentary work involving occasional balancing, stooping, crouching, and climbing ramps and stairs, but that he could not kneel, crawl, or climb ladders, ropes, or scaffolds. (Id.) The RFC further limits French to occasional overhead reaching bilaterally and requires the use of a cane in the workplace. (Id.) At step

four, the ALJ determined that French is unable to perform his past relevant work. (Id. at 19-20.) At step five, having considered French's age, education, work experience, and RFC, the ALJ determined that there are jobs existing in significant numbers in the national economy that French could perform, such as office worker, information clerk, or order clerk. (Id. at 20-21.) As such, the ALJ concluded that French is not disabled. (Id. at 21.)

## Analysis

French argues that the ALJ's decision denying his application for benefits should be reversed because, according to him, she failed to adequately consider the combined effects of his impairments, to properly assess his hearing testimony, to properly weigh his treating physicians' opinions, and to pose a complete hypothetical to the VE during the hearing. This court's review of the ALJ's decision is "extremely limited," asking only whether the decision is free of legal error and supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (internal quotations and citations omitted). Because the court's role is neither to reweigh the evidence nor to substitute its own judgment for the ALJ's, if the ALJ's decision is adequately supported and explained it must be upheld even where "reasonable minds can differ over whether the applicant is disabled." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). In order to adequately support the decision, the ALJ must build "an accurate and logical bridge

from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (internal quotation omitted).

## A. Combined Effects of Impairments

French first argues that the ALJ failed to consider the combined impact of his impairments, but the specifics of his argument are confusing. He first references 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526, all of which speak to the application of the listings at step three, but French does not point to any listing that the ALJ should have considered but overlooked, or develop any argument with respect to the ALJ's step-three analysis. (R. 10, Pl.'s Mem. at 6.) "In deciding whether an impairment meets or equals a listed impairment, an ALJ must mention the relevant listings and make more than a 'perfunctory analysis' of whether the impairment meets the criteria." *See Wurst v. Colvin*, 520 Fed. Appx. 485, 488 (7th Cir. 2013). Here, the ALJ explained in her decision that she considered "all of the claimant's impairments, both individually and in combination," but found that the "record does not contain any medical opinion indicating that a listing was met or equaled." (A.R. 14.) The ALJ also specifically considered Listing 1.04 for degenerative disc disease of the lumbar spine but found that French did not satisfy this listing as he "lacks any persistent neurological abnormalities, evidence of arachnoiditis, or pseudoclaudication that resulted in the inability to ambulate effectively." (Id.) Because French has not explained how he meets all of the criteria of any listing that the ALJ overlooked, his step-three challenge is unavailing. *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

French also references severe systemic disease, chronic obstructive pulmonary disease ("COPD"), and obesity in arguing that the case should be remanded for the ALJ to consider the combined effect of these conditions. But French acknowledges that severe systemic disease as found in his medical record is a term used by an anesthesiologist to classify his pre-surgery health, rather than a separate impairment. (See R. 15, Govt.'s Mem. at 2; R. 16, Pl.'s Reply[3] at 1; A.R. 327.) Specifically, severe systemic disease as used in the American Society of Anesthesiologists' classification system means the patient has a controlled disease in one or more body systems, with examples including morbid obesity or bronchospastic disease with intermittent symptoms. *See* https://my.clevelandclinic.org/health/treatments_and_procedures/hic_ASA_Physical _Classification_System (last visited 09/14/16).[4] The notation therefore does not reflect a separate impairment that the ALJ should have considered in combination with the others. As for COPD, the ALJ discussed this condition at step two of the analysis and explained why the evidence suggests it has no more than a minimal

---

[3] When setting the briefing schedule for motions for summary judgment, the court advised French that a leave of court was required to file a reply brief. (R. 7.) Despite this requirement, French filed a reply brief without explaining the need and without seeking leave of court. (R. 16.) However, the court considered French's reply brief because the court recently changed its practice regarding the filing of reply briefs in Social Security cases—giving plaintiffs the option to file a reply but not requiring one.

[4] The Commissioner cited this website in her response brief to explain the "severe systemic disease" reference and French did not object to that citation or explanation in his reply brief.

impact on French's ability to perform work activity, even when considered in combination with his other problems. (A.R. 14.)

The ALJ's treatment of French's obesity presents a closer call. The Social Security Administration has made clear that ALJs should consider the effects of obesity together with the claimant's other underlying impairments in evaluating the severity of symptoms and the RFC. *See* SSR 02-1P, 2002 WL 34686281, at *3 (Sept. 12, 2002). But an ALJ's failure to explicitly consider the effects of obesity may be harmless where the ALJ adopts limitations suggested by doctors who were aware of the claimant's obesity and a claimant fails to articulate how obesity has further limited his conditions and functioning. *See Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006). In this case, French does no more than state that a "reasonable mind would review his activities of daily living and know that his reduction of activity is inconsistent with working," which is insufficient to show that he is more limited because of his obesity than the restrictions set forth in the RFC.[5] (R. 10, Pl.'s Mem. at 7); *see also Prochaska*, 454 F.3d at 737; *Hernandez v. Astrue*, 227 Fed. Appx. 617, 624 (7th Cir. 2008) ("Where the claimant herself is silent in this regard, we have repeatedly excused as harmless error the failure of an ALJ to explicitly address the claimant's obesity as SSR 02–1p prescribes so long as the ALJ

---

[5] This assertion also suggests a misapprehension of the applicable standard of review. The question at this stage in the process is not whether French has shown that a reasonable person could look at his medical records and conclude that he is disabled. The court's role is not to reweigh the evidence. Instead, as long as the ALJ's decision is free of legal error and supported by substantial evidence, the court must affirm even if reasonable minds may disagree over whether French is disabled. *See Shideler*, 688 F.3d at 310.

demonstrated that he reviewed the medical reports of the doctors familiar with the claimant's obesity.")  More importantly, the ALJ did not ignore the impact of French's obesity.  She devoted a paragraph of her decision to considering the limiting effects of his obesity on his ability to work.  (A.R. 18.)  Specifically, the ALJ explained:

> I note that the claimant's medical problems are exacerbated by obesity. Body Mass Index (BMI) is a measure of an individual's obesity, indices 30 and above are considered to be in the obese range.  The claimant's BMI has ranged from 48.8 to 53.7 . . . .  Social Security Ruling 02-01p notes that the combined effects of obesity with other impairments may be greater than might be expected without obesity.  Based on the evidence before me, I find that the claimant's obesity does have a limiting effect on his ability to work, and given his combination of impairments, I have reduced him to a range of less demanding sedentary work.

(Id.)  This analysis could have been more specific, but it satisfies the court that the ALJ considered French's obesity in connection with his other impairments and factored this into her RFC determination.

That said, this court is sensitive to the Seventh Circuit's suggestion that— especially in cases involving extreme obesity—an ALJ must address in more than a conclusory manner how the claimant's weight interacts with or exacerbates his other impairments.  For example, in both *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014), and *Browning v. Colvin*, 766 F.3d 702, 706-07 (7th Cir. 2014), the court reversed the Commissioner's decisions in part because the ALJs paid insufficient attention to the claimants' morbid obesity.  Of particular relevance, in *Browning* the Court characterized as "sufficiently obvious" that a person with morbid obesity might have difficulty with the kind of prolonged sitting required by sedentary work,

and wrote that an ALJ must do more than acknowledge a claimant's extreme obesity in assigning an RFC for sedentary work. *Browning*, 766 F.3d at 707. Although given French's extreme obesity these decisions give the court pause, here the ALJ's discussion of French's weight was sufficient to build the required logical bridge between the evidence and her conclusion. The ALJ acknowledged French's BMI in the course of analyzing the impact of his obesity on his overall condition and explained that she added limitations to reduce the range of sedentary work as an accommodation for his obesity. (A.R. 18.) Moreover, the ALJ gave great weight to the opinion of consulting physician Dr. Smith, who explicitly referenced French's obesity in explaining his opinion that French can perform sedentary work with some postural and manipulative limitations. (Id. at 18, 489-90.) Thus in contrast to the situations in *Goins* and *Browning*, not only did the ALJ do more than simply acknowledge French's obesity, she rested her RFC analysis on a medical expert's translation of the kinds of limitations that apply to a person with French's combination of obesity and other impairments. Furthermore, nowhere in his testimony did French describe any limitations in his ability to sit that might restrict him beyond the assigned RFC. For these reasons, French has not shown that the ALJ failed to properly account for the combined impact of his obesity and other impairments.

**B.      Credibility Determination**

French next argues that the ALJ erred in assessing his credibility by failing to offer specific reasons for the adverse credibility finding.[6] (R. 10, Pl.'s Mem. at 7-8.) This court's review of an ALJ's analysis of the credibility of a claimant's symptoms is particularly deferential because the credibility determination will only be overturned if it is "patently wrong," or "divorced from the facts contained in the record." *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). Here, contrary to French's assertions, the ALJ provided a number of well-supported reasons to explain the adverse credibility finding. For example, the ALJ pointed to a lack of support in the record for French's description of his severe and frequent headaches, which he said he suffered two to three times a day. (A.R. 18, 55.) The ALJ noted that although French had bad headaches before his surgeries, records after his onset date "do not document any compelling complaints of headaches or concentration problems." (Id. at 18.) Moreover, the ALJ did not accept French's testimony that his impairments are so severe he requires help with dressing and showering because during the DDS consultative examination he was able to "fully extend the hands, make fists and appose fingers" as well as retain "normal ability to grasp and manipulate objects." (Id. at 18, 477.) The ALJ also explained that she

---

[6] The Social Security Administration recently issued an SSR updating its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new SSR 16-3p supersedes SSR 96-7p, eliminating the term "credibility" from the Administration's sub-regulatory policies in favor of a focus on symptom evaluation. *Id.* at *1. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but they "will continue to assess the credibility of pain *assertions* by applicants." *Cole v. Colvin*, __ F.3d __, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016) (emphasis in original).

did not accept his testimony regarding the extent of his back pain because the medical records show that his pain had significantly improved with conservative treatment and that he had declined or delayed steroid injections and physical therapy. (Id. at 17.) These are valid reasons for which an ALJ may discount a claimant's testimony regarding symptom severity. See 20 C.F.R. § 404.1529(c); *Berger*, 516 F.3d at 546.

## C. Medical Opinions

French next challenges the ALJ's treatment of several medical opinions, notably those of Dr. Simon, a DDS examiner, and Dr. Faber, French's treating physician. (R. 10, Pl.'s Mem. at 8-13.) With respect to Dr. Simon, French argues that the ALJ erroneously disregarded his findings in crafting the RFC. In her decision, the ALJ found that French "should be limited to occasional overheard reaching bilaterally." (A.R. 14.) In his consultative examination, Dr. Simon noted a "decreased range of motion, abduction 90 degrees with pain, flexion 120 degrees with pain, extension 30 degrees with pain, [and] internal and external rotation 70 degrees with pain" for his right shoulder. (Id. at 477.) He also noted "decreased range of motion, abduction 75 degrees with pain, flexion 90 degrees with pain, internal rotation 40 degrees with pain, and external rotation 60 degrees with pain" for his left shoulder. (Id.) French argues that the "ALJ's RFC is not possible" because, according to him, Dr. Simon's report shows he cannot perform occasional overhead reaching. (R. 10, Pl.'s Mem. at 9.) But while Dr. Simon did note limitations in French's range of motion, nowhere in his report did he say that

French is incapable of occasional overhead reaching. Moreover, the two consulting physicians who reviewed Dr. Simon's report both concluded that French is capable of occasional overhead reaching bilaterally. (A.R. 491, 498.) The ALJ was entitled to rely on these opinions in assessing French's RFC. *See Flener ex rel. Flener v. Barnhart,* 361 F.3d 442, 448 (7th Cir. 2004).

With respect to Dr. Faber, French argues that the ALJ violated the treating-physician rule when she rejected Dr. Faber's May 2011 opinion that French had been unable to work since his 2007 on-the-job injury. (A.R. 469.) Dr. Faber opined that French has been "limited in his ability to use his upper extremities, sleep, drive, concentrate, and to perform all activities of daily living," and that he expected his disability to continue "indefinitely." (Id.) In medical evaluations completed on August 16, 2010, and April 15, 2013, Dr. Faber opined that French was more than 50 percent reduced in his ability to bend, stand, sit, stoop, manipulate grossly and finely, and use his fingers. (Id. at 469, 519.)

The treating-physician rule "directs the [ALJ] to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart,* 439 F.3d 375, 376 (7th Cir. 2006). Once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight. *Id.* At that point, "the treating physician's evidence is just one more piece of evidence for the [ALJ] to weigh." *Id.* at 377. Accordingly, if the treating physician's opinion is inconsistent

with a consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it. *See* 20 C.F.R. § 404.1527(c); *White v. Barnhart,* 415 F.3d 654, 659 (7th Cir. 2005).

In this case, the ALJ determined that Dr. Faber's medical opinions warranted little weight for a number of reasons. First, the ALJ found that French's pain was managed by medication. For example, in his notes Dr. Faber observed that French's pain had improved in May 2013 and that he was doing relatively well while compliant on medication during a visit in July 2013. (A.R. 19, 531, 533.) Though French argues in his brief that the ALJ failed to consider the debilitating side effects of his medication, he testified at the hearing that he did not suffer any significant side effects from his pain medication and that his Fentanyl patch helps alleviate his back pain. (Id. at 48-49.)

Second, the ALJ concluded that Dr. Faber's opinions rested on French's subjective allegations and are unsupported by his examination findings. (Id. at 19.) In response French argues that Dr. Faber's opinions are supported by an MRI that post-dates his two opinions. (R. 10, Pl.'s Mem. at 11; A.R. 529.) Obviously, the results of a test that came after the doctor rendered his opinions could not have informed those opinions. To the extent he is arguing that the MRI reports bolster Dr. Faber's opinions because Dr. Mulconrey recommended epidural injections after reviewing the reports, Dr. Mulconrey also noted in conjunction with that recommendation that French "has shown significant improvement in the past several weeks with conservative treatment care." (A.R. 536.) French also asserts

that Dr. Faber's opinions are supported by his observations drawn from physical examinations. But in the "physical exam" section of his treatment notes Dr. Faber repeatedly indicated that he observed French to be in no acute distress or only mild distress, or left that portion of the notes blank. (See, e.g., id. at 442-52, 455-57, 486, 506, 508, 510, 512, 514, 525, 533.) Those are not the observations one would expect to see of a patient who is 50% reduced in his ability to engage in almost all physical activities, including sitting. Those records support the ALJ's conclusion that Dr. Faber's opinions rest on French's subjective complaints, which is a relevant factor in weighing a treating physician's opinion. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (finding decision to discount treating physician's opinion supported by substantial evidence where physician's conclusions based "almost entirely" on claimant's subjective complaints).

Moreover, with respect to Dr. Faber's opinions, the ALJ correctly pointed out that his disability finding is not controlling because that is an issue reserved solely for the Commissioner. *See* 20 C.F.R. § 404.1527(d). Regardless, the ALJ followed the regulations and evaluated the medical records to determine that Dr. Faber's medical opinions warrant little weight, as they were internally inconsistent. (A.R. 19); *see also* SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). Though Dr. Faber had treated French for 10 years, as the ALJ noted, the limitations he assigned French are not supported by his own treatment records. In fact, much of the treatment records from 2010 through 2013 document French's issues with bronchitis, obesity, and smoking. (See, e.g., A.R. 452, 510, 514.) The ALJ concluded

that Dr. Faber's treatment of French over the years simply does not support the degree of the limitations ascribed in his opinions. The ALJ was entitled to rely on the inconsistencies between Dr. Faber's treatment notes and his opinions as a basis to discount those opinions. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Third, the ALJ rejected Dr. Mulconrey's September 19, 2011 note stating that he did not "disagree with Dr. Faber's assessment of Donald's overall medical condition and his ability to return to work." (A.R. 403.) The ALJ did so because she found that the treatment records from April 2011 through September 2011 do not support this assertion, and Dr. Mulconrey provided no medical basis for this determination. (Id. at 18-19.) Specifically, the ALJ explained that in April 2011 Dr. Mulconrey had opined that French could perform light work with occasional reaching, and pointed to no medical changes or new observations to explain why he "did not disagree" with Dr. Faber's opinion that French was completely disabled five months later. (Id.) Again, because the ALJ pointed to the discrepancy between the doctor's treatment notes and his opinion, her decision to discount Dr. Mulconrey's opinion is supported by substantial evidence.

## D. Hypothetical

Finally, French argues that remand is warranted because the ALJ posed hypothetical questions to the VE that, according to him, did not wholly capture the full picture of his limitations. (R. 10, Pl.'s Mem. at 13-14.) Specifically, he faults the ALJ for failing to include in the RFC limitations tied to what he describes as his inability to concentrate, difficulty holding objects, and fatigue. Ordinarily, a

hypothetical question to the VE must include all limitations supported by the medical evidence to ensure that the VE understands the full extent of the limitations in matching the hypothetical RFC to available jobs. *See Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002). But the ALJ is required to incorporate into the hypotheticals only those impairments and limitations that she accepts as credible. *See Schmidt*, 496 F.3d at 846. Here, the ALJ did not find French's description of his fatigue, concentration, and handling issues credible, so she was not required to include them in the hypothetical posed to the VE.

## Conclusion

For the foregoing reasons, French's motion for summary judgment is denied, the government's is granted, and the Commissioner's final decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**